

**U.S. Department of Justice**

*United States Attorney*
*Southern District of New York*

*The Silvio J. Mollo Building*

*One Saint Andrew's Plaza*
*New York, New York  10007*

June 26, 2008

**BY HAND**

The Honorable Denise L. Cote
United States District Court
Southern District of New York
500 Pearl Street
New York, New York 10007

>     Re:   **United States v. Ricardo Cuesado,**
>           **07 Cr. 799 (DLC)**

Dear Judge Cote:

      The Government respectfully submits this letter in advance of the defendant's sentencing in this matter.  The defendant pled guilty to a four-count Indictment that charged him with sending threatening communications through the mails, in violation of 18 U.S.C. § 876(c).  In particular, from March 24, 2005, through April 15, 2005, the defendant sent four letters threatening to injure and kill a female victim of the defendant's 2002 push-in robbery ("Victim"), who had testified against him at trial.  Defense counsel has moved for a departure pursuant to U.S.S.G. § 5K2.13 due to the defendant's mental state, or, in the alternative, a non-guidelines sentence pursuant to the factors in 18 U.S.C. § 3553.  While the Government acknowledges that the defendant currently has significant psychological problems, a departure pursuant to U.S.S.G. § 5K2.13 is not warranted in this case.  Similarly, in considering all of the factors of 18 U.S.C. § 3553, a sentence within the Guidelines Range of 37-46 months' imprisonment, which runs consecutively to the defendant's current sentence of imprisonment, is appropriate.

BACKGROUND

      On August 5, 2000, a Victim and her boyfriend were the victims of a push-in robbery in the Bronx.  PSR ¶ 7.  During that robbery, the Victim and her boyfriend were threatened with a gun.  Id.  The Victim later testified in the trial against Ricardo Cuesado, the defendant, and the defendant was convicted of Robbery in the First Degree and sentenced to ten years' imprisonment.  PSR ¶ 8.

      Beginning in March, 2005, the defendant sent a series of four threatening letters to the Victim.  These letters were sent to the apartment at which the Victim lived in 2000, and the

Hon. Denise L. Cote
June 26, 2008
Page 2

grocery store at which the Victim formerly worked. PSR ¶ 10. The letters, and translations for the letters, are attached as Exhibits A, B, C, and D. The letters clearly evidenced an intention to kill the Victim, stating, for example: "Each day that goes by I think about you. Don't you believe that I like you, I think of you because I'm going to kill you. It's understood that I'm going to kill you. If you pray start getting your book of prayers, to sing your funeral song." Gov't Exh. A, at 2. The defendant not only threatened the Victim in these letters, but also threatened her family: "Bitch your days are numbered. But, before I want to hurt you where it hurts most, and you can suffer a lot before your turn to die comes. For example killing your father and your mother. If they are dead there is no problem, there are your brothers and if your brothers are dead there is no problem either, because there are your children, where it hurts the most, right?" Gov't Exh. A, at 2. The letters also told the Victim that the defendant had others in her neighborhood who would kill her: "Do you know who is going to take care of you pretty soon? My cousin. And you know who is my cousin. The owner of a drug point in Manhattan and another one in the Bronx. He has people who are hit men and work for him. He already knows who you are. Good-bye bitch." Gov't Exh. A, at 2. In the second letter, the defendant also threatened to torture the Victim: "Guess that first I'm going to tie you up like the other time, after I'll cut off one arm then a leg so you can suffer and afterwards what had to be expected, I'll cut your head off." Gov't Exh. B, at 2.

The defendant was Indicted on August 22, 2007, in a four-count indictment, which charged him with sending threatening communications through the mail. PSR ¶ 1-2. On February 27, 2008, pursuant to a request by defense counsel, the defendant was evaluated to determine his competency to stand trial by Dr. Elissa R. Miller, Psy. D., Forensic Psychologist, and Dr. Cristina Liberati, Ph.D., Acting Chief Psychologist, at the Metropolitan Correctional Center. Def. Exh. A. In that report, Dr. Miller concluded that the defendant "presents with Psychotic Disorder NOS, Depressive Disorder NOS, and Antisocial Personality Traits," and that "[d]ue to the chronic and pervasive nature of his difficulties, his poor judgment and insight, and his failure to evaluate the consequences of his behavior, his prognosis is guarded." Def. Exh. A, at 10. Dr. Miller also stated that the defendant had "grandiose beliefs he can help save the United States from terrorism," including his ideas of the "need for a robot that does not move, can archive information people need, and can go ahead of time." Def. Exh. A., at 5. Dr. Miller concluded:

> Although Mr. Cuesado may suffer from subtle psychotic disorder, his unusual beliefs about his abilities to combat terrorism do not appear to intertwine with his ability to understand his current legal situation or to consult with his attorney about the facts of the case. . . . In the opinion of this evaluator, Mr. Cuesado is competent to stand trial.

Def. Exh. A., at 10.

Hon. Denise L. Cote
June 26, 2008
Page 3

## ARGUMENT

**I.   A Downward Departure Pursuant to U.S.S.G. § 5K2.13 Is Not Warranted**

   **A.   Applicable Law**

Pursuant to U.S.S.G. § 5K2.13, a downward departure may be warranted due to a defendant's diminished capacity if:

> (1) the defendant committed the instant offense while suffering from a significantly reduced mental capacity; and
>
> (2) the significant reduced mental capacity contributed substantially to the commission of the offense.

Id. A "significantly reduced mental capacity," is defined as "a significantly impaired ability to (a) understand the wrongfulness of the behavior comprising the offense or to exercise the power of reason; or (b) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13, app. note 1. Even if one qualifies as having a significantly reduced mental capacity, a departure pursuant to § 5K2.13 is not available if "the facts and circumstances of the defendant's offense indicate a need to protect the public because the offense involved actual violence or a serious threat of violence." U.S.S.G. § 5K2.13.

   **B.   The Defendant Does Not Exhibit A "Significantly Reduced Mental Capacity" Under U.S.S.G. § 5K1.13**

There is no dispute that the defendant suffers from a "subtle psychotic disorder," and exhibits symptoms consistent with multiple psychiatric diagnosis including Depressive Disorder and Antisocial Personality Traits. Def. Exh. A., at 10. His grandiose ideas regarding robots and saving the United States are certainly bizarre and consistent with the psychological diagnosis made by Dr. Miller. However, having a psychological disorder is not synonymous with having a "significantly reduced mental capacity" pursuant to U.S.S.G. § 5K1.13.

Notably, the defendant seems to understand the wrongfulness of his behavior, and exhibits an ability to control that behavior. In his interview with Dr. Miller, the defendant understood that he was charged with sending threatening letters, and acknowledged that "the letter says many horrible, terrible, and ugly things." Def. Exh. A, at 10. Furthermore, the defendant stated that he wrote them because "he was just mad." Def. Exh. A, at 11. Both of these statements evidence an understanding of his wrongful behavior.

Hon. Denise L. Cote
June 26, 2008
Page 4

      Additionally, the letters themselves do not exhibit the same grandiose beliefs about terrorism or robots about which the defendant has written.  The letters are very direct, real, and frightening threats that were made against a victim who had testified against the defendant at his robbery trial.  They evidence an angry man who blames the Victim for his incarceration, and who wishes the Victim to suffer - whether that suffering is simply emotional or physical as well.  In short, the defendant did not write the letters due to a compulsive psychological impairment that he could not control, but out of the anger and hatred he felt towards a victim who testified against him at trial, and against whom he wanted to retaliate.  His criminal behavior in writing the letters, thus, does not rise to a "significant reduced mental capacity," as defined under the Sentencing Guidelines.

      Finally, the defendant would be precluded from a departure under U.S.S.G. § 5K2.13 because the instant offense involved serious threats of violence.  While there is no evidence that the defendant ever attempted to carry out the threats contained in his letters, the letters still evidence serious threats to the Victim.  The defendant threatened to kill and/or torture, the Victim, her parents, her siblings, and her children.  Gov't Exh. A, at 2.  The defendant also told the Victim that his cousin was a drug dealer and could kill her while the defendant was in prison.  Gov't Exh. A, at 2.  While we have no indication whether the defendant does have such a cousin, we do know that there were two other individuals who committed the 2002 robbery with the defendant, and these two other individuals were never apprehended.  PSR ¶ 38.  Thus, these threats were very serious, and certainly taken that way by the Victim.

### III. A Sentence Within The Guidelines Range Is Appropriate Considering The Circumstances And Nature Of This Case

      The Government submits that a sentence within the guidelines range appropriately takes into account all of the factors under 18 U.S.C. § 3553, including the nature of the offense, the history and characteristics of the defendant, and the need to afford adequate deterrence.

      The nature of the current offense counsels in favor of a sentence within the guidelines range.  The letters, in the words of the defendant himself, say "horrible" things, and were specifically intended to cause the Victim to fear for her life and her family's lives.  They not only threatened to kill the victim, but to torture her, and attempted to convince the Victim that even though the defendant was imprisoned, he still had people on the outside that would kill the Victim's family for him.  There was not just one letter, but four different letters, sent over a three-week period to both the Victim's former apartment and the Victim's former place of employment – trying to ensure that they reached the Victim.  Finally, the letters were meant to retaliate against a victim that the defendant had already bound, gagged, and robbed.

      The history and characteristics of the defendant also counsel for sentence within the Guidelines Range.  18 U.S.C. § 3553(a)(1).  Defense counsel argues that the defendant's

Hon. Denise L. Cote
June 26, 2008
Page 5

psychological problems warrant a non-guidelines sentence.  First, the Government is in agreement with Probation that the defendant should be afforded mental health treatment.  However, while the defendant's psychological problems certainly should be taken into account, they also must be weighed against the seriousness of the offense, and the other history of defendants, which includes the defendant's past violent criminal conduct: his January 2000 conviction for criminal possession of a weapon in the third degree where the defendant was found in possession of a loaded firearm containing ten rounds; and his April 2002 conviction for robbery in the first degree, where he bound and gagged the Victim and her boyfriend.

      Finally, the Government opposes a sentence that would run concurrently to the defendant's current sentence of incarceration.  A fully concurrent sentence would effectively be no punishment at all for the defendant's criminal conduct in sending these letters.  Similarly, there would be little, if any, general or specific deterrence, to the defendant or society for sending threatening mail once someone is already in prison.  If the sentence is to have a punitive and deterrent effect on the defendant, and is to provide general deterrence against inmates retaliating against witnesses, such sentences should run consecutively.

## CONCLUSION

      For these reasons, the Government respectfully requests that the Court impose a sentence of imprisonment within the applicable Guidelines range that runs consecutively to the defendant's current sentence of imprisonment for Robbery in the First Degree.

      Respectfully submitted,

      MICHAEL J. GARCIA
      United States Attorney
      Southern District of New York

      By:   /s Michael M. Rosensaft
      Michael M. Rosensaft
      Assistant United States Attorney
      212-637-2366

cc:     Sabrina Shroff, Esq.