```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :

        - v. -                    :    SENTENCING MEMORANDUM

RICARDO CUESADO,                  :    07 Cr. 799 (DLC)

        Defendant.                :

- - - - - - - - - - - - - - - - - x
```

# Federal Defenders
## OF NEW YORK, INC.

Southern District
52 Duane Street-10th Floor, New York, NY 10007
Tel: (212) 417-8700 Fax: (212) 571-0392

Leonard F. Joy
*Executive Director*

*Southern District of New York*
John J. Byrnes
*Attorney-in-Charge*

August 25, 2008

**By ECF**

Honorable Denise L. Cote
United States District Judge
Southern District of New York
500 Pearl Street
New York, New York 10007

Re:  **United States v. Ricardo Cuesado**
    **07 CR 799 (DLC)**

Hon. Judge Cote:

I write on behalf of my client, Ricardo Cuesado, and in response to the government's June 26, 2008 letter ("Government Letter") that argues, despite current case law to the contrary, as the United States Attorneys' Office does in nearly every single case it prosecutes, for a sentence within the guidelines range. Additionally, the government requests that the guidelines range sentence be imposed to run consecutive to the 10 year sentence Mr. Cuesado is currently serving.

In the defense's original sentencing submission (the "Defense Letter"), we urged the Court to impose a sentence below the advisory Guidelines range and to run any term of incarceration concurrent with the state sentence Mr. Cuesado is currently serving. This request was based on (i) Mr. Cuesado's diminished mental capacity under U.S.S.G. 5K2.13; (ii) his unique mental state that would also be a consideration under 18 U.S.C. § 3553(a); and (iii) the need for the sentence imposed to comport with the overarching principle that dictates the final sentence imposed - the parsimony principle of 18 U.S.C. 3553(a) (that sentences should be "sufficient, but not greater than necessary").

The prosecutor's letter does little to address leave alone dispel these concerns that have been repeatedly articulated by the United States Supreme Court, see, United States v. Kimbrough, and by Circuit Judges everywhere. See United States v. Jones, 531 F.3d 163, 181 (2d. Cir. 2008)(the parsimony principle is paramount and it is the "particular trust" of a district court to impose such a sentence). In arguing that Mr. Cuesado does not qualify for

Hon. Denise L. Cote                                             Page 2
Judge, Southern District of New York

a departure under section 5K2.13 of the United States Sentencing Guidelines (hereinafter "U.S.S.G"), the U.S. Attorney's office betrays an incomplete, and misguided understanding of how this provision of the sentencing guidelines is applied, and the rationale underlying it.

Similarly, the prosecution fails in its attempt to demonstrate that a consecutive, within the guidelines sentence (essentially asking for a mentally sick man such as Mr. Cuesado to be incarcerated for 13 years in total), would not be "greater than necessary" to achieve the purposes of sentencing in this case. See, United States v. Ministrio-Tapia, 470 F.3d. 137 (2d Cir. 2008).

For the reasons stated below, and those presented in Mr. Cuesado's initial submission, we ask the Court for a sentence below the guidelines range or one that runs concurrently so as to accomplish the same goal – the imposition of a sentence that is no greater than necessary to punish, treat and rehabilitate Mr. Cuesado.

I. **MR. CUESADO QUALIFIES FOR A DOWNWARD DEPARTURE UNDER §5K2.13**

   A. The Fact that Mr. Cuesado Told Dr. Miller that He Knew His Actions Were Wrong Does Not Disqualify Him From a Diminished Capacity Departure

The government's assertion that Mr. Cuesado "does not exhibit a 'significantly reduced mental capacity under U.S.S.G. §5K1.13," because he "seems to understand the wrongfulness of his behavior," betrays an incomplete understanding of how §5K2.13 is applied. Govt. Letter at 3. While emphasizing that the defendant understood the wrongfulness of his actions, the government completely ignores the instructions of §5K2.13's application note explaining that defendants who exhibit "a significantly impaired ability to…control behavior that [he or she] knows is wrongful," also qualify for diminished capacity departures under this provision. U.S.S.G. § 5K2.13, app. note 1. This is an oversight by the government.

As an initial matter, the fact that Mr. Cuesado understood the wrongfulness of his actions at the moment of his interview with Dr. Miller does not mean that he understood this when he sent the letters. It is quite possible that, when sending the letters, Mr. Cuesado was

Hon. Denise L. Cote                                           Page 3
Judge, Southern District of New York

unstable and under the grips of a grandiose delusion, which had passed by the time of his Competency to Stand Trial Evaluation. Therefore, his statements to Dr. Miller are not enough to show that Mr. Cuesado fully understood the harmfulness of his letters at the time that he sent them.

More importantly, though, the fact that Mr. Cuesado may have understood the wrongfulness of his actions does not lead to the conclusion that he does not exhibit a reduced mental capacity under §5K2.13. On the contrary, the application note to §5K2.13 clearly states that a defendant qualifies for a diminished capacity departure if he or she has an impaired ability to "understand the wrongfulness of [his or her] behavior . . . <u>or</u> (b) control behavior that the defendant knows is wrongful." U.S.S.G. § 5K2.13, app. note 1 (emphasis added). <u>See also, e.g.</u> <u>United States v. Lighthall</u>, 389 F.3d 791, 795 (8th Cir. 2004) (stating that" Section 5K2.13 is targeted at offenders who demonstrate 'a significantly impaired ability to ... control behavior that the defendant knows is wrongful,'" and upholding downward departure in spite the fact that the defendant "knew his actions were wrongful") (quoting U.S.S.G. 5K1.13, app. note 1(B)); <u>United States v. Cantu</u>, 12 F.3d 1506, 1513 (9th Cir. 1993) (holding the defendant "eligible for [a 5K2.13 departure] if his ailment distorted his reasoning and interfered with his ability to make considered decisions"); <u>Id</u>. at 1512 ("the goal of the guideline is lenity toward defendants whose ability to make reasoned decisions is impaired," and whose "mental impairments may distort or suppress the formation of reasoned decisions").

In its original sentencing submission, the defense discussed at length the severity of Mr. Cuesado's mental illness, and the process through which his condition worsened during his term of incarceration. There is no need to repeat all of those details here, except to inform the Court that although provided with an opportunity, Mr. Cuesado declined to be evaluated by Dr. Goldsmith. See, Psychiatric Report dated August 19, 2008, attached hereto as Ex. A.

Suffice it to say that there is no doubt that Mr. Cuesado's Psychotic Disorder Not Otherwise Specified – the symptoms for which include delusions, hallucinations, disorganized speech, and grossly disorganized behavior – impaired, his ability to make reasoned decisions, and control his behavior, even if, when not under the grips of a delusion, Mr. Cuesado was able to recognize that sending the letters was wrong.

Hon. Denise L. Cote                                           Page 4
Judge, Southern District of New York

    Just as relevant is the fact that Mr. Cuesado seems to operate under a truly strange belief that the troubles of the world would be cured by his intervention. See, letters written by Mr. Cuesado to the Federal Bureau of Investigations informing them of a "third power". See, Ex. A to Defense Letter. Obviously, that is simply not a valid belief, and nevertheless his behavior is prompted by it, and uncontrolled by the rational part of him that led Dr. Miller to conclude that he was not incapacitated.

  B. <u>Mr. Cuesado's Pyschological Disorder "Contributed Substantially" to the Offense</u>

    The government further argues that Mr. Cuesado does not qualify for a 5K2.13 departure because he "did not write the letters due to a compulsive psychological impairment that he could not control," but out of anger and a desire to retaliate. Initially, the government's dismissive attitude regarding Mr. Cuesado's mental illness, and its accompanying assumption that Mr. Cuesado sent the letters as part of a rational plan to retaliate is undercut by the fact that he waited three years before sending the letters, and took no action to carry out his threats once the letters were sent. Had Mr. Cuesado simply wished to retaliate against the victim in this case, there is no reason why he would have waited three years in order to do so.

    In fact, it seems more logical to assume that he would have acted immediately after being sentenced, or even while his robbery prosecution was ongoing – when threats might have stopped the victim from testifying against him, and gained him the benefit of an acquittal. Instead, Mr. Cuesado spent the first three years of his state sentence incarcerated without incident, before experiencing the apparent psychological break that lead to the crimes under consideration in this case. The fact that Mr. Cuesado's psychological condition had been steadily worsening over his years in prison is corroborated by the rambling, delusional letter that he sent to the FBI shortly after penning his letters to the victim. <u>See</u> Defendant's Letter at 3, and the exhibits attached to Mr. Cuesado's first submission.

    Moreover, as a legal matter, pointing out the defendant's potential anger towards the victim does not indicate that Mr. Cuesado's mental illness was not a contributing cause of his actions – it merely suggests that his illness may not have been the sole cause. Given,

Hon. Denise L. Cote                                      Page 5
Judge, Southern District of New York

however, that "the Guidelines policy statement underlying §5K2.13 is an exercise in lenity . . . it is recognized that a defendant's 'significantly reduced mental capacity' must be a contributing cause of the offense, but need not be a sole cause.'" United States v. Harris, 1994 WL 683429, 4 (S.D.N.Y. 1994) (quoting United States v. Soliman, 954 F.2d 1012, 1014 (5th Cir. 1992)). See also United States v. Glick, 946 F.2d 335, 339 (4th Cir. 1991) ("[d]iminished capacity need not be the sole cause of the offense to justify a departure"); United States v. Ruklick, 919 F.2d 95, 97 (8th Cir. 1990) ("the policy statement does not require proof amounting to but-for causation," and 5K2.13 should be interpreted "to authorize a downward departure where…a defendant's diminished capacity comprised a contributing factor").

There is no doubt that Mr. Cuesado's illness was a contributing factor and prompted his writing of the letters and mailing them in an envelope that noted his real name, his "DIN number" in the state prison system, and the name and address of the state facility in which he was incarcerated.

### C. Mr. Cuesado's Letters Do Not Constitute a "Serious Threat" of Violence

Finally, the government's argument that Mr. Cuesado's letters that were not followed by any attempt to actually carry out a single threat, constitute a "serious threat" of violence under §5K2.13, is just wrong.

Undoubtedly, the substance of Mr. Cuesado's letters was "serious" - and wrong. Determining whether an offense constitutes a "serious threat of violence" under §5K2.13, however, does not hinge on whether the threat, if carried out, would be a "serious" crime. Rather, this language should be interpreted as requiring the court to analyze whether it was likely that the threat would be carried out. For example, in United States v. Denton, 146 Fed. Appx. 888 (9th Cir. 2005), the government appealed the trial court's decision to offer a 5K2.13 departure on exactly the same grounds that the government advances in this case: that the subject matter of the defendant's threats dealt with serious issues[1], and that the district court should not have based its decision of to depart "on whether the defendant posed a low, moderate, or high risk of actually going through with

---

[1] The defendant in Denton had threatened to manufacture weapons of mass destruction in a scheme to extort money from Chevron. Denton, 146 Fed. Appx at 888.

Hon. Denise L. Cote                                          Page 6
Judge, Southern District of New York


his threats." Cross-Appeal Brief of Government-Appellee at 10 n.7, <u>United States v. Denton</u>, 146 Fed. Appx. 888 (9th Cir. 2005) (Nos. 02-50494, 02-50535). The Ninth Circuit, however, upheld the district court's decision to grant a downward departure. <u>Denton</u>, 146 Fed. Appx. at 891 ("although…the statements Denton made…were 'serious expressions of an intent to harm,' the district court had ample foundation on which to base its determination that …Denton's offense did not represent a serious threat of violence"). <u>Cf.</u> <u>United States v. Cotto</u>, 793 F. Supp. 64, 67 (E.D.N.Y. 1992) (granting a 5K2.13 departure because "there was never any real possibility that the offense would be successful").[2] That is exactly the case here, and the government itself concedes that given the fact that Mr. Cuesado was incarcerated and more importantly that he did not even know that his intended victim had re-located not just from her home but had also left her job. That Mr. Cuesdo sent his letters to the wrong (old) address of the victim is further indication of the hollowness of his threats.

    The government admits that "there is no evidence that the defendant ever attempted to carry out [his] threats." Govt. Letter at 4. However, the government argues that the threats were "serious" because Mr. Cuesado mentioned a cousin, who is a drug dealer and in a position to actualize Mr. Cuesado's threats. As the government acknowledges, though, there is "no indication whether the defendant [has] such a cousin." Moreover, it is essential to note that, even if a cousin did exist, Mr. Cuesado made no attempt to contact him, either before or after he sent these letters to the victim. PSR ¶ 51 (the only person on Mr. Cuesado's state phone list is a female cousin, who changed her number, and whose new number Mr. Cuesado does not know).

    The government also mentions the fact that the other two individuals who committed the robbery with Mr. Cuesado were never apprehended, in support of its position that the threats were serious. Why this is relevant is puzzling to the defense, given that Mr. Cuesado never makes any threats

---

[2] As a matter of common sense, this interpretation seems wise. If "serious threat of violence" were interpreted differently, a "serious threat of violence" could be said to occur every time someone states, "I'm gonna' kill you," in an argument, no matter how unlikely it is that the declarant ever had a murderous intent.

Hon. Denise L. Cote                                    Page 8
Judge, Southern District of New York


principle"); United States v. Rodriguez, 527 F.3d 221, 228 (1st Cir. 2008) (parsimony of sentence is the "overarching principle" running through §3553(a)'s "tapestry of factors"). In determining the appropriate, not greater than necessary, sentence, the Second Circuit has clearly stated that "[a]s a necessary corollary to the constitutional proscription on treating the Guidelines as mandatory, sentencing courts 'may not presume that the Guidelines range is reasonable,'" and must instead "make an 'individualized assessment' of the sentence warranted by § 3553(a) 'based on the facts presented.'" United States v. Jones, 531 F.3d 163, 170 (2d Cir. 2008) (quoting United States Gall, 128 S. Ct 586, 596-97 (2007)). In this case, such an individualized assessment reveals that the advisory guidelines sentence does not satisfy the principle of parsimony, and is thus contrary to 18 U.S.C. 3553(a).

In original sentencing submission, the defense discussed in detail why a below-guidelines, concurrent sentence would satisfy every statutory purpose contained in 18 U.S.C. 3553(a), and there is no need to repeat every argument here. It bears emphasizing, however, that Mr. Cuesado is currently serving a lengthy ten-year sentence, and that, when this term of imprisonment concludes, Mr. Cuesado will be immediately deported back to the Dominican Republic (after spending some time detained in an immigration jail). Mr. Cuesado does not need to spend an additional four years in federal custody, allowing his mental illness to worsen.

Moreover, in response to the government's specific objection that a concurrent sentence will have no punitive or deterrent effect, the defense urges the court to remember that this offense was committed by a man in the grips of mental illness. That this is the case greatly changes the analysis regarding the need for a sentence to be particularly "punitive." Cf. United States v. Hansen, 701 F.2d 1078, 1083 (2d Cir. 1983) ("We think the same principle that requires a finding of criminal responsibility before a conviction may be obtained exerts substantial caution against the enhancement of a sentence because of conduct for which the defendant was not criminally responsible. To countenance unfettered use of such conduct to enhance punishment would be to ignore 'the long unbroken tradition of the criminal law that harsh sanctions should not be imposed where moral culpability is lacking'" ) (quoting Lennon v. Immigration and Naturalization Service, 527 F.2d

Hon. Denise L. Cote                                          Page 9
Judge, Southern District of New York

187, 193 (2d Cir. 1975)). Similarly, the whole idea of deterrence assumes that the defendant is capable of thinking rationally, and acting accordingly. This is not the case for Mr. Cuesado, who, as Dr. Miller states, suffers from "delusions, hallucinations, disorganized speech, and grossly disorganized behavior." Therefore, the best means of deterring both Mr. Cuesado and other similarly situated defendants (meaning, mentally ill) from committing this type of offense is by providing adequate treatment.

The 36-47 month guidelines sentence recommended by the government will not satisfy the principle of parsimony, because a below-guidelines, concurrent sentence is sufficient to achieve all of the purposes of punishment expressed in §3553(a). The sentencing court has broad latitude to depart from the advisory guidelines, and that discretion should be exercised here. See <u>Jones</u> 531 F.3d at 171 n.5 ("If there is a pattern that emerges from <u>Rita</u>, <u>Gall</u>, and <u>Kimbrough</u>, it is that district court judges were vindicated in all three cases . . . the central lesson from these decisions is that district courts have considerable discretion in this area"). Mr. Cuesado is a deeply troubled, mentally ill man, who never truly intended to harm the victim. He is serving a ten year sentence, and will face immediate deportation upon his release. Tacking on more years to his prison term, instead of providing him with treatment while incarcerated and allowing him to be more quickly deported, is clearly "greater than necessary" to satisfy the purposes of punishment.

## Conclusion

For these reasons, and those set forth in the original Cuesado submission, the Court should impose a sentence below the advisory guidelines calculation, and run any term of incarceration concurrent with his state sentence.

                                        Respectfully Submitted,

                                        Sabrina P. Shroff
                                        Assistant Federal Defender


cc: AUSA Michael M. Rosensaft